Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000918
18-SEP-2019
07:46 AM

NO. CAAP-17-0000918

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAII, Plaintiff-Appellee, v.
STEPHEN KALIKO MAKANANI, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 5CPC-17-0000020)

SUMMARY DISPOSITION ORDER
(Leonard, Presiding Judge, Chan and Hiraoka, JJ.)

Defendant-Appellant Stephen Kaliko Makanani (**Makanani**)

appeals from the Judgment of Conviction and Sentence, filed on

November 27, 2017 (**Judgment**), in the Circuit Court of the Fifth

Circuit (**Circuit Court**).[1]  Makanani was convicted of one count of

Unauthorized Control of Propelled Vehicle, in violation of Hawaii

Revised Statutes (**HRS**) § 708-836 (2014),[2] and one count of

---

[1]     The Honorable Randal G.B. Valenciano presided.

[2]     HRS § 708-836 states:

>     **§ 708-836  Unauthorized control of propelled vehicle.**
> (1) A person commits the offense of unauthorized control of
> a propelled vehicle if the person intentionally or knowingly
> exerts unauthorized control over another's propelled vehicle
> by operating the vehicle without the owner's consent or by
> changing the identity of the vehicle without the owner's
> consent.
>     (2) "Propelled vehicle" means an automobile, airplane,
> motorcycle, motorboat, or other motor-propelled vehicle.
>                                         (continued...)

Unauthorized Entry into Motor Vehicle, in violation of HRS § 708-836.5 (2014).[3] Makanani was sentenced to five years of incarceration to be served concurrently.

On appeal, Makanani raises seven points of error, arguing that the Circuit Court erred by: (1) denying Makanani's purported motion to suppress the first photo lineup viewed by the complaining witness, Tito Castillo (**Castillo**); (2) allowing an in-court identification of Makanani; (3) failing to properly instruct the jury with respect to the dangers of eyewitness identification; (4) proceeding with a jury that did not represent a fair cross-section of the community and by excusing prospective

---

[2](...continued)
        (3) It is an affirmative defense to a prosecution under this section that the defendant:
    (a)    Received authorization to use the vehicle from an agent of the owner where the agent had actual or apparent authority to authorize such use; or
    (b)    Is a lien holder or legal owner of the propelled vehicle, or an authorized agent of the lien holder or legal owner, engaged in the lawful repossession of the propelled vehicle.
        (4) For the purposes of this section, "owner" means the registered owner of the propelled vehicle or the unrecorded owner of the vehicle pending transfer of ownership; provided that if there is no registered owner of the propelled vehicle or unrecorded owner of the vehicle pending transfer of ownership, "owner" means the legal owner.
        (5) Unauthorized control of a propelled vehicle is a class C felony.

[3]     HRS § 708-836.5 states:

        **§708-836.5 Unauthorized entry into motor vehicle in the first degree.** (1) A person commits the offense of unauthorized entry into motor vehicle in the first degree if the person intentionally or knowingly enters or remains unlawfully in a motor vehicle, without being invited, licensed, or otherwise authorized to enter or remain within the vehicle, with the intent to commit a crime against a person or against property rights.
        (2) Unauthorized entry into motor vehicle in the first degree is a class C felony.

jurors in violation of HRS § 612-7 (2016);[4] (5) admitting certain exhibits, not providing a proper limiting instruction with respect to those exhibits, and allowing a witness to identify Makanani using one of the exhibits; and (6) denying a motion *in limine* that sought to prevent a witness from identifying Makanani in a photograph. In his final point of error (7), Makanani argues that he was denied effective assistance of counsel because counsel failed to seek the suppression of Makanani's first photo lineup and failed to object to the admission of certain exhibits at trial.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Makanani's points of error as follows:

(1) Makanani argues that he was denied due process, and the Circuit Court abused its discretion, when the first photographic lineup was not suppressed.

Makanani filed a motion to suppress, which sought the suppression of "the second identification via photographic line-up performed by [Castillo] on November 4, 2016, because it was performed in an impermissibly and unnecessarily suggestive manner." This motion *did not* seek the suppression of the first photo lineup, which is the subject of Makanani's first point of

_____

[4]     HRS § 612-7 states:

> § 612-7 Excused when, for cause. A prospective juror shall not be excused by a court for slight or trivial cause, but only when it appears that jury duty would entail a serious personal hardship, or that for other good cause the prospective juror should be excused either temporarily or otherwise.

error. While, at the hearing on the motion to suppress the second lineup, Makanani's attorney tangentially mentioned "additional factors that came to light, including, one, during the first identification," there was no oral (or written) motion to suppress the first lineup. Moreover, as Makanani recognizes on appeal, Makanani – not the State – first solicited testimony from Castillo about the first lineup, and Makanani introduced the first lineup into evidence. Makanani presented this evidence to show that Castillo identified two persons in the first lineup, one of which was Makanani, as possible suspects, and Castillo could not positively identify Makanani from the first lineup as the person who stole his vehicle.

The general rule is that "evidence to which no objection has been made may properly be considered by the trier of fact and its admission will not constitute ground for reversal." State v. Naeole, 62 Haw. 563, 570, 617 P.2d 820, 826 (1980); see also State v. Nichols, 111 Hawai'i 327, 339 n.7, 141 P.3d 974, 986 n.7 (2006) (generally, a party who invites error in the trial court waives the right to have the error considered on appeal, because a party should not profit from an error that the party induced). Here, we decline to depart from the general rule as it was a reasonable trial strategy for defense counsel to introduce evidence that Castillo was unable to make a positive identification during the first photo lineup.

(2) Makanani contends that Castillo should not have been allowed to make an in-court identification of Makanani after the alleged impermissibly suggestive lineups.

Makanani objected at trial to the in-court identification, but the objection was overruled. The Circuit Court found a number of circumstances supporting Castillo making the in-court identification, including that Castillo personally observed the suspect when the vehicle was returned, he took a picture of the suspect, during the first lineup he was able to narrow down the identification to two people, one of whom was Makanani, and, shortly after the incident occurred, Castillo was able to discover the suspect's name and view pictures on Makanani's Facebook account to make a positive identification. The Circuit Court found, based on all the factors, that the fact that the second photo lineup was suppressed was not dispositive and the in-court identification should be allowed.

In State v. Mitake, 64 Haw. 217, 221, 638 P.2d 324, 327 (1981), the Hawai'i Supreme Court explained that "when determining the validity of a timely pre-trial motion to suppress identification evidence because of an alleged suggestive confrontation, the trial court must undertake a two-part inquiry." (Citation and footnote omitted). "First, the court must decide whether the procedure utilized was impermissibly suggestive. If so, the court then determines whether, despite the suggestiveness, the identification is nonetheless reliable." Id. The factors to be considered include:

> "(T)he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation."

5

Id. at 221 n.3, 638 P.2d at 327 n.3 (quoting Neil v. Biggers, 409 U.S. 188, 199-200 (1972)); see also State v. Tolentino, No. 28492, 2009 WL 3039921, *6-7 (Haw. App. Sept. 22, 2009) (mem. Op.) (applying test to determine whether suppression of identification evidence is warranted where pre-trial identification was impermissibly suggestive).[5]

We similarly conclude that, where a suggestive identification procedure has been suppressed, an in-court identification may nevertheless be permitted if the proposed identification can otherwise be shown to be reliable, and not simply based on the impermissibly suggestive procedure. For the reasons articulated by the Circuit Court, and based on the entire record before the court, we conclude that the Circuit Court did not err in allowing Castillo's in-court identification of Makanani.

(3) Makanani argues that the Circuit Court erred in instructing the jury because the jury instructions regarding the "identification were inadequate, offering no guidance as to the possibility of an unreliable identification."

The jury was provided a specific instruction with respect to eyewitness identification, which provided:

> The burden of proof is on the prosecution with reference to every element of a crime charged, and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the person responsible for the crime charged.
> You must decide whether an eyewitness gave accurate testimony regarding identification.

---

[5] This test is the same as the one applied by the federal courts. See e.g., United States v. Wise, 515 F.3d 207, 215 (3d Cir. 2008); United States v. Lumpkin, 192 F.3d 280, 288 (2d Cir. 1999); United States v. Fields, 167 F.3d 1189, 1190 (8th Cir. 1999).

> In evaluating identification testimony, you may consider the following factors:
> The opportunity of the witness to observe the person involved in the alleged criminal act;
> The stress, if any, to which a witness was subject at the time of the observation;
> The witness's ability, following the observation, to provide a description of the person;
> The extent to which the defendant fits or does not fit the description of the person previously given by the witness;
> The cross-racial or ethnic nature of the identification;
> The witness's capacity to make an identification;
> Evidence relating to the witness's ability to identify other participants in the alleged criminal act;
> Whether the witness was able to identify the person in a photographic or physical lineup;
> The period of time between the alleged criminal act and the witness's identification;
> Whether the witness had prior contacts with the person;
> The extent to which the witness is either certain or uncertain of the identification and whether the witness's assertions concerning certainty or uncertainty are well founded;
> Whether the witness's identification is in fact the product of his/her own recollection; and
> Any other evidence relating to the witness's ability to make an identification.

Makanani argues the instruction was insufficient because it provided no warnings relating to the malleability of human memory, the dangers of misidentification, race-bias, system suggestiveness, and environmental factors.

In State v. Cabagbag, the supreme court considered the problems associated with eyewitness identifications and held that because it cannot be assumed that juries will know how to assess the trustworthiness of eyewitness identification evidence, "when eyewitness identification is central to the case, circuit courts must give a specific jury instruction upon the request of the defendant to focus the jury's attention on the trustworthiness of the identification." 127 Hawai'i 302, 313-14, 277 P.3d 1027, 1038-39 (2012). The supreme court then provided an instruction in the opinion that would address the general concerns regarding

7

eyewitness identifications.  Id. at 314, 277 P.3d at 1039.  The instruction read:

> [T]he burden of proof is on the prosecution with reference to every element of a crime charged, and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the person responsible for the crime charged.
>
> You have heard eyewitness testimony identifying the defendant.  As with any other witness, you must decide whether an eyewitness gave accurate testimony.
>
> In evaluating identification testimony, consider the following factors:
>
> The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act;
>
> The stress, if any, to which the witness was subject at the time of the observation;
>
> The witness' ability, following the observation, to provide a description of the perpetrator of the act;
>
> The extent to which the defendant fits or does not fit the description of the perpetrator previously given by the witness;
>
> The cross-racial or ethnic nature of the identification;
>
> The witness' capacity to make an identification;
>
> [Evidence relating to the witness' ability to identify other alleged perpetrators of the criminal act;]
>
> [Whether the witness was able to identify the alleged perpetrator in a photographic or physical lineup;]
>
> The period of time between the alleged criminal act and the witness' identification;
>
> Whether the witness had prior contacts with the alleged perpetrator;
>
> The extent to which the witness is either certain or uncertain of the identification;
>
> Whether the witness identification is in fact the product of his own recollection;
>
> Any other evidence relating to the witness' ability to make an identification.

Id. (footnote omitted).

We conclude that the instruction provided in this case was consonant with the instruction that the supreme court concluded would adequately address the concerns regarding a

jury's ability to evaluate an eyewitness identification. See id. Makanani does not argue that he submitted a jury instruction that was rejected by the court that would have addressed his additional concerns, and it appears he did not. For these reasons, we conclude that Makanani's third point of error has no merit.

(4) Makanani argues that the jury venire prejudiced him as it did not represent a fair cross-section of the community and prospective jurors were excused in violation of HRS § 612-7. Makanani submits that the Master List from which Kaua'i selects its jury pool "likely does not provide a fair cross-section of the community as it likely includes a lower proportion of Hawaiians/Pacific-Islanders" because they have been traditionally marginalized and are less likely to vote and obtain driver's licenses. Makanani states he is a Hawaiian/Pacific-Islander and the jury pool list "appears" to have had no Hawaiians/Pacific-Islanders included in the jury pool.

"The selection of a jury from a representative cross-section of the community is an essential component of the right to an impartial jury guaranteed by the sixth amendment to the United States Constitution." State v. Richie, 88 Hawai'i 19, 41, 960 P.2d 1227, 1249 (1998) (citing Taylor v. Louisiana, 419 U.S. 522, 528 (1975), and article I, section 14 of the Hawai'i Constitution).

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due

> to systematic exclusion of the group in the jury-selection process.

Id. (citation omitted). In Richie, the defendant claimed that the jury did not reflect a fair cross-section of the community because African-Americans were not sufficiently represented. Id. at 40-41, 960 P.2d at 1248-49. The supreme court denied his claim, stating:

> Although it is clear that African-Americans qualify as a distinctive group in the community, Richie points to no evidence supporting the other two elements. There is no indication that African-Americans were underrepresented on the venire in relation to their number in the community. Even assuming *arguendo* that African-Americans were underrepresented, there is no indication that it was due to systematic exclusion in the jury selection process. Thus, there is insufficient evidence of a prima facie violation of the fair cross-section requirement.

Id. at 41, 960 P.2d at 1249.

Similarly here, there is no evidence that Hawaiians/ Pacific-Islanders were under-represented on the Master List and no indication that they were systemically excluded in the jury selection process. Makanani speculates regarding the ethnicity of the jury pool, but no information regarding the jury pool's ethnicity is in the record. Makanani claims that the fact that the lists from which the jury pool is drawn and the Master List itself do not include ethnicity information is itself a violation of his right to a fair jury because it is impossible to determine whether the pool represents a fair cross-section of the community. Makanani cites no authority to support this proposition. Even if there were underrepresentation as claimed by Makanani, Makanani makes no attempt to show that it has been caused by the "systematic exclusion of the group in the jury-selection process." Id. at 41, 960 P.2d at 1249. For

example, Makanani does not allege that the State used its available challenges to the jury pool to exclude any class of juror. Makanani has not made a *prima facie* case that the jury did not represent a fair cross-section of the community.

Makanani also argues that prospective jurors were excused over his objection in violation of HRS § 612-7. Makanani challenges the excusal of four male jurors, Jurors 8, 31, 33, and 37, and argues that their excusal limited the number of potential male jurors. He points out that forty-nine jurors were called but only thirty-six appeared. After the jurors were excused, the potential jury pool was narrowed down to twenty-four from which twelve jurors were chosen. Makanani complains that his jury pool included only six men, only three of whom were chosen to sit on the jury.

> HRS § 612-7 states:
>
> A prospective juror shall not be excused by a court for slight or trivial cause, but only when it appears that jury duty would entail a serious personal hardship, or that for other good cause the prospective juror should be excused either temporarily or otherwise.

The Hawai'i Supreme Court has instructed that "generally, the circuit courts are vested with considerable discretion in the matter of excusing persons from jury service. Absent an abuse of that discretion, the judge's decision will not be disturbed." State v. Mara, 98 Hawai'i 1, 12, 41 P.3d 157, 168 (2002) (citations omitted).

The Circuit Court questioned each of the jurors that Makanani argues should not have been dismissed. Juror 8 was excused as he was the sole full-time care-giver to his 88-year

11

old father who has ocular and macular degeneration and is unable to drive. The court questioned Juror 8, who stated he had no one else who could take care of his father. Juror 31 was excused for incontinence issues. He stated that he could give the court a minute notice when he had to urinate. Juror 33 was excused because he is a Catholic priest who had to preside over a funeral during trial and there was no one to take his place. Finally, Juror 37 was excused because he had an MRI scheduled to prepare for a medical appointment with a doctor who travels monthly to Kaua'i. He explained that if he missed the appointment, he would not be able to see the doctor for another month. The Circuit Court questioned each juror regarding their situations and made a reasoned judgment that the jurors deserved to be excused based on personal hardships. We find no abuse of discretion in the court's decision to excuse these jurors.

(5) Makanani argues the Circuit Court erred by admitting State's Exhibits P-1 and P-2, by not providing limiting instructions relating to said exhibits, and by allowing the State's witness to identify Makanani using Exhibit P-2. Exhibit P-1, a print of the photo Castillo took on his cell phone, was entered into evidence without objection. Exhibit P-2, a zoomed-in and enlarged version of the same photo, was also admitted into evidence without objection.

"The general rule is that evidence to which no objection has been made may properly be considered by the trier of fact and its admission will not constitute grounds for reversal." State v. Samuel, 74 Haw. 141, 147, 838 P.2d 1374,

1378 (1992) (citing Naeole, 62 Haw. at 570-71, 617 P.2d at 826). The exception to this general rule is plain error, whereby "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." See State v. Fields, 115 Hawai'i 503, 535, 168 P.3d 955, 987 (2007); Hawai'i Rules of Penal Procedure (**HRPP**) Rule 52(b).

Castillo testified that Exhibit P-1 was the original photograph that he took with his cell phone. It would have been apparent to the jury that the printed photograph was larger than a cell phone screen. Regarding Exhibit P-2, Castillo testified that it was an "enlarged photograph" of Exhibit P-1. The jury would have understood that the photograph was taken from Castillo's cell phone and enlarged and offered as an exhibit.

Makanani cites State v. Seguin, 73 Haw. 331, 337-38, 832 P.2d 269, 273 (1992), in which the Hawai'i Supreme Court found that the trial court did not abuse its discretion when it excluded a photo from trial taken of certain land six months after the events in question because the witness could not testify that the photo fairly and accurately depicted the area at the time of the events in question. The trial court had excluded the photo "based upon a determination that the photograph did not substantially depict the area as it existed in June 1986, and that the exhibit could thereby mislead the jury." Id. at 338, 832 P.2d at 273. The supreme court found that the photo was properly excluded "because it did not subsequently depict the cockfighting pit and its immediate environs" at the time of the alleged offense. Id.

13

In this case, Exhibits P-1 and P-2 are not misleading; both Castillo and another trial witness, Taylor Turner (**Turner**), testified that the exhibits were accurate reproductions of the photo taken by Castillo. Castillo showed the photo on his cell phone to Turner, a waitress at a nearby restaurant, who recognized the man in the photo and was able to identify him as Makanani. Castillo also testified that he posted the photo on Facebook and found Makanani on Facebook after learning Makanani's name from Turner. We cannot conclude that the Circuit Court plainly erred by admitting Exhibits P-1 and P-2.

Makanani also requests plain error review of the failure of the court to present a special instruction "noting the enlargement of both photos." Makanani cites no authority providing that a special instruction is required whenever a photograph is enlarged, and we find none. As explained *supra*, based on Castillo's testimony, the jury knew that the images in Exhibits P-1 and P-2 came from Castillo's cell phone and thus could see for themselves that the photos were bigger than a phone screen. Makanani also states that the court "should have sustained [his] objection to [Turner] identifying Mr. Makanani as the individual in [Exhibit P-2]" because Exhibits P-1 and P-2 "are patently misleading." As explained above, we do not find that the exhibits were misleading. Thus, we conclude that this point of error is without merit.

(6) Makanani argues that the Circuit Court erred by denying the motion *in limine* in which he sought an order prohibiting Turner from testifying that the photograph taken by

Castillo was of Makanani, because the testimony invaded the province of the jury.

Hawaiʻi Rules of Evidence (**HRE**) Rule 701 (2016), regarding opinion testimony by lay witnesses, provides:

> **Rule 701 Opinion testimony by lay witnesses.** If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

As explained in State v. Jenkins, 93 Hawaiʻi 87, 105, 997 P.2d 13, 31 (2000),

> HRE Rule 701 thus sets forth a liberal standard for admitting lay opinions into evidence. As long as (1) the witness has personal knowledge of matter that forms the basis of the testimony; (2) the testimony is rationally based on the witness' [sic] perception; and (3) the opinion is "helpful" to the jury (the principal test), the opinion testimony is admissible.

(citations omitted).

Turner testified that she was familiar with Makanani before the events in question and had spent significant time with him in the past. On the day Castillo's car was stolen, Turner saw Makanani at her place of employment and saw the clothes he was wearing. She testified that she recognized Makanani in the photo based on his appearance and the clothes he was wearing. This testimony is (1) rationally based on her perception and (2) helpful to the jury to determine whether Makanani was, in fact, the suspect in the photo. See HRE Rule 701. Significant time had passed between the underlying events and the trial itself, and there was evidence that Makanani's appearance at the time of trial was different than when the underlying events occurred. We conclude that Turner's testimony concerning her prior familiarity

with Makanani and her personal knowledge of Makanani's appearance at the time of the incident may have been helpful to the jury. Makanani provides no authority, or other argument, to support that Turner should not have been able to so testify, and we find none.

(7) Makanani argues he was denied effective assistance of counsel because trial counsel did not seek suppression of the first photo lineup and because trial counsel failed to object to the admission of Exhibits P-1 and P-2 and/or request a limiting instruction.

The Hawai'i Supreme Court has set forth the following standards for reviewing claims of ineffective assistance of counsel:

> When reviewing a claim of ineffective assistance of counsel, this court looks at whether defense counsel's assistance was "within the range of competence demanded of attorneys in criminal cases." State v. Antone, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980) (citations and internal quotation marks omitted). "The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Aplaca, 74 Haw. 54, 66-67, 837 P.2d 1298, 1305 (1992). To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. State v. Christian, 88 Hawai'i 407, 419, 967 P.2d 239, 251 (1998). A defendant need not prove actual prejudice. Id.

State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (footnote omitted).

Makanani argues that trial counsel should have sought to preclude the admission of evidence of the first photo lineup because it tended to support the State's identification of Makanani as the individual in Castillo's photo of the suspect.

16

We reject this argument. As explained *supra*, Makanani's counsel introduced the evidence regarding the first lineup in her cross-examination of Castillo to show that Castillo was unable to make a positive identification of Makanani on the day of the incident. "Specific actions or omissions alleged to be error but which had an obvious tactical basis for benefitting the defendant's case will not be subject to further scrutiny." State v. DeLeon, 131 Hawai'i 463, 479, 319 P.3d 382, 398 (2014) (quoting Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994)). "[M]atters presumably within the judgment of counsel, like *trial strategy*, will rarely be second-guessed by judicial hindsight." Richie, 88 Hawai'i at 39-40, 960 P.2d at 1247-48 (citation and internal quotation marks omitted). We conclude that trial counsel's decision to introduce evidence regarding the first photo lineup had an obvious tactical basis and was well within the range of competence demanded of attorneys in criminal cases.

Makanani also argues that Exhibits P-1 and P-2 were "unduly prejudicial as they are both enlarged photographs" but only Exhibit P-2 "was ever referenced as being an enlarged photograph." Makanani asserts, but does not explain, that the admission of the exhibits "bolstered the credibility" of Turner and, therefore, counsel's failure to object to those exhibits constituted ineffective assistance. As explained *supra*, both Castillo and Turner testified that the exhibits were accurate reproductions of the photo Castillo took on his cell phone. It would have been obvious to the jury that P-1 was larger than a cell phone screen and the jury was informed that Exhibit P-2 was

a zoomed-in and enlarged version of Exhibit P-1. Makanani does not explain how the failure to object was an error that "resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." Wakisaka, 102 Hawai'i at 514, 78 P.3d at 327. Makanani's defense was that he was not the man pictured in Castillo's photo, *i.e.*, that he was not the person who stole and then returned Castillo's vehicle. The photos were highly relevant to the issue of Makanani's identification. "Probative evidence always 'prejudices' the party against whom it is offered since it tends to prove the case against that person." Samson v. Nahulu, 136 Hawai'i 415, 430, 363 P.3d 263, 278 (2015) (citation omitted). We cannot conclude, under the facts of this case, that simply enlarging the photos created a danger of *unfair* prejudice, *i.e.*, the kind of prejudice that would skew the trial result in an improper way. Thus, we conclude that trial counsel's failure to raise a baseless objection was not an impairment of a potentially meritorious defense.

Makanani's claim regarding the failure to request a limiting instruction relating to the enlargement of the exhibits fails for the same reasons. As explained above, there is no support for Makanani's claim that such an instruction was required in this case and, even if there were, there is no argument that counsel's failure to request the instruction withdrew or substantially impaired a potentially meritorious defense. Thus, we conclude that Makanani's final point of error is without merit.

For these reasons, the Circuit Court's November 27, 2017 Judgment is affirmed.

DATED: Honolulu, Hawai'i, September 18, 2019.

On the briefs:

Kai Lawrence,
for Defendant-Appellant.

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauai,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge